**Rebecca L. FENNELL, Plaintiff,**

v.

**AETNA LIFE INSURANCE COMPANY, and Aramark Corporation, Defendants.**

**Equal Employment Opportunity Commission, Plaintiff,**

v.

**Aramark Corporation, and Aetna Life Insurance Company, Defendants.**

**Nos. Civ.A. 97–716 (RMU), 97–734 (RMU).**

United States District Court, District of Columbia.

Feb. 26, 1999.

Leslie Stellman, Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, Maryland, for plaintiff Fennell.

Dana R. Hutter, U.S. Equal Employment Opportunity Commission, Baltimore

District Office, Baltimore, Maryland, for plaintiff EEOC.

Tracy Zorpette, Steptoe & Johnson LLP, Washington, D.C., for defendants.

### MEMORANDUM OPINION

URBINA, District Judge.

### Granting the Defendants' Motion for Summary Judgment

## I. INTRODUCTION

These consolidated cases come before the court on the defendants' motion for summary judgment. The court grants the defendants' motion for summary judgment on the Title I claim because Plaintiff Rebecca Fennell, a former employee, does not fall within the class of persons covered by Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, in that she cannot perform the essential job functions either with or without accommodation. The court grants the defendants' motion for summary judgment on the Title III claim because the ADA's definition of a place of public accommodation does not encompass an employee disability benefit plan.

## II. BACKGROUND

Plaintiff Rebecca Fennell worked for Defendant Aramark ("Aramark") for over ten years, holding various management positions in Aramark's food service operations. (Fennell Am.Compl. at ¶¶ 4, 6.) In October 1994 she began to suffer from psychogenic seizures and other mental and emotional disorders, which ultimately led to her being diagnosed as suffering from a disability due to mental illness. (Fennell Am.Compl. at ¶ 7.) The illness forced her to take a leave of absence from her job with Aramark, and Aramark terminated her employment on February 15, 1996. (Fennell Am.Compl. at ¶¶ 6, 7.) The Social Security Administration subsequently deemed Fennell eligible for Social Security Disability benefits. (Fennell Am.Compl. at ¶ 7.)

In addition to receiving Social Security Disability benefits, Fennell participated in a Long–Term Disability Plan as one of her fringe benefits from Aramark. (Fennell Am.Compl. at ¶ 8.) Defendant Aetna Life Insurance Company ("Aetna") underwrote the policy pursuant to a contract between it and Aramark. (Fennell Am.Compl. at ¶ 8.) The plan's terms provided different maximum lengths of disability benefits depending on whether the subscriber suffered from a mental or physical disability. (See Fennell Am.Compl. at ¶ 9; EEOC 1st Am.Compl. at ¶ 10.) Specifically, the plan provided for disability benefits through a disabled employee's 65th birthday in cases of disability due to non-mental conditions and for disability benefits for a maximum of 24 months for disabilities caused by a mental condition. (Am.Compl. at ¶ 9; see EEOC 1st Am.Compl. at ¶ 10.)

Because Fennell's disability fell within the latter category, her benefits terminated on April 15, 1997, two years after she began receiving them. (Fennell Am. Compl. at ¶ 10; Pls.'s Mem. in Opp'n to Defs.'s Mot. for Summ.J. at 4.) Consequently, Fennell and Plaintiff Equal Employment Opportunity Commission ("EEOC") brought separate actions before this court alleging that Aramark and Aetna discriminated against Fennell by providing a shorter duration of disability benefits because of Fennell's mental disability.

The EEOC sought a temporary restraining order and preliminary injunction under Title I of the ADA, which prohibits employers from discriminating against qualified individuals with disabilities. As the federal agency charged with the administration, interpretation and enforcement of Title I of the ADA, the EEOC sought to correct such employment practices and provide relief for Fennell and for all other persons adversely affected by the limitations on benefits for persons with mental conditions. (EEOC 1st Am. Compl., pp. 1–2.) Fennell sought a preliminary injunction under Title III of the ADA, which prohibits "public accommoda-

tions" from entering into contractual, licensing or other arrangements that deny the opportunity to benefit from a good or service on the basis of disability. *See* 42 U.S.C. § 12182(a); (Fennell Am.Compl. at ¶ 17.)

The court ruled proper venue existed in this district to bring these claims, denied the motion for a temporary restraining order, consolidated the two cases, and ordered the plaintiffs' motions for a preliminary injunction consolidated with a resolution of the case on the merits, Fed.R.Civ.P. 65(a)(2). By consent and with the court's approval, the parties agreed to forego discovery until after the court issued a ruling on summary judgment.

## III. ANALYSIS

### A. Standard for Summary Judgment

The district court may enter summary judgment where the moving party demonstrates that there is no genuine issue of material fact in dispute and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party has presented a properly supported motion, the nonmoving party must go beyond the pleading to identify evidence that allows a reasonable jury to find in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Drawing from affidavits, depositions, and answers to interrogatories, the nonmovant must identify specific facts indicating that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, the court's function at the summary judgment stage is not to weigh the evidence but to determine whether sufficient evidence exists for a reasonable fact finder to return a verdict in the nonmovant's favor and warrant a trial. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In the present case, the court concludes that no genuine issue of material fact exists, and the case is ripe for summary judgment adjudication.

### B. EEOC's Title I Claim

In their motion for summary judgment, the defendants note that section 102(a) of the ADA limits the protection of Title I to a "qualified individual with a disability," defined as an individual who, with or without reasonable accommodation, can perform the essential functions of the job. (Defs.'s Mem. in Supp. of Mot. for SummJ. at 5.) Because Fennell is totally disabled, the defendants argue, she cannot perform her job functions and therefore does not fall within the protections of Title I of the ADA. (*Id.*) The EEOC argues in response that the protected interest of the former employee arose during the period of her employment and therefore the ADA's prohibitions apply. (*See* Pls.'s Mem. in Opp'n, 18–19.)

■ This presents the issue, then, of whether a former employee can be considered a qualified individual with a disability under the ADA for purposes of a suit based on that former employee's fringe benefits. Neither the Supreme Court nor the District of Columbia Court of Appeals has ruled on this issue, and a split exists among the circuits as to whether a totally disabled former employee can bring a Title I challenge to the provisions of a long-term disability plan. *See* Blakley, Allison C., *Is Depression Disabling America's Group Insurance Plans? Mental Health Benefit Parity and the ADA,* 27–SUM Brief 40, 41 (1998).

The EEOC has brought suit in Illinois raising the same issue, but involving a different former employee, and both the District Court for the Northern District of Illinois and the Seventh Circuit found that the former employee could not bring such a claim under the ADA. Specifically, in *Equal Employment Opportunity Comm'n v. CNA Ins. Co.,* 96 F.3d 1039 (7th Cir. 1996), the EEOC brought suit asking the court to decide to what extent, if at all, the ADA requires equality of treatment among disabilities in benefit plans. 96 F.3d at 1041. In that case the former employee,

Cynthia Valladares–Toledo, received disability payments for a period of two years because she suffered from a disability caused by a mental or emotional disorder, whereas the long-term insurance plan would have provided disability benefits until age 65 if she had suffered from a physical disability. *See* 96 F.3d at 1041. Finding the EEOC's theory "at best, strained," the Seventh Circuit held that a person with the status of "benefit recipient" does not fit within the definition of someone filling an employment position and therefore could not raise a cognizable claim under Title I of the ADA. *See* 96 F.3d at 1043–45.

In *Ford v. Schering–Plough Corp.*, 145 F.3d 601 (3d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 850, 142 L.Ed.2d 704 (1999), the Third Circuit examined the same issue and reached the opposite conclusion. In *Ford* the Third Circuit ruled that Title I's prohibition against discrimination with respect to terms, conditions and privileges of employment, including fringe benefits, permits former employees to sue their former employers over their disability benefits. 145 F.3d at 608. In reaching this conclusion, the Third Circuit found the statutory language of the ADA ambiguous, in that a plain reading of the language restricted eligibility to sue under Title I to persons who currently work whereas the statute had the stated intent of covering employment practices, including benefits. *See* 145 F.3d at 606. To correct for this ambiguity, the Third Circuit read out the "temporal qualifier" by defining the term "qualified individual with a disability" to include "former employees who were once employed with or without reasonable accommodations yet who, at the time of suit, are completely disabled." 145 F.3d at 606.

In *Castellano v. New York*, 142 F.3d 58 (2d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 60, 142 L.Ed.2d 47 (1998), the Second Circuit also faced the issue of whether former employees could challenge post-employment fringe benefits but declined to resolve the issue. Rather, the Second Circuit disposed of the case on the merits after "assuming without deciding" that the former employees fell within the classification of qualified individuals (under Title II of the ADA).

Upon reading the statute and considering the legislative purpose of the ADA, this court concludes that the holding of *CNA* squares more closely with the purpose of the ADA than do the holdings of *Ford* or *Castellano*. In this respect, Congress enacted the ADA to ensure nondiscriminatory treatment in the workplace for disabled individuals, or those with a perceived disability, who could perform the essential functions of their positions. *See, e.g., Castellano,* 142 F.3d at 68 ("Where the alleged discrimination relates to the provision of post-employment benefits, rather than to hiring, promotion, or firing, Congress's expressed concern about qualifications is no longer implicated.") For this reason, Congress limited ADA coverage to those who fall within the term "qualified individual with a disability," 42 U.S.C. § 12112(a), and Congress defined that term as meaning an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," 42 U.S.C. § 12111(8). Additionally, this court notes that even the Third Circuit reached the conclusion that a plain reading of the statutory language restricted Title I eligibility to persons who currently work.

The record indicates that Fennell's mental disability prevents her from working for Aramark. Because of this, Fennell cannot, either with or without reasonable accommodation, perform the essential functions of her employment position. The court finds the statutory language clear on this point, in that a person who cannot perform the essential functions of the job does not fall within the coverage of Title I of the ADA. Consequently, the court rules that Fennell is not a qualified individual with a disability for purposes of

coverage under the ADA. Therefore, the court concludes that the EEOC cannot bring a claim in this case under Title I to challenge the different levels of long-term disability benefits available to former employees. Accordingly, the court grants the defendants' motion for summary judgment and dismisses EEOC's claim.

## C. Fennell's Title III Claim

 Fennell brings her allegation under Title III of the ADA alleging Aramark and Aetna discriminated against her, based on her particular disability (mental illness), in that they entered into an arrangement that denied her the opportunity to participate in or benefit from goods, services, privileges or advantages otherwise available to other individuals (*i.e.*, disability benefits until age 65). (*See* Fennell Am. Compl. at ¶ 18.) In their motion to dismiss Aramark and Aetna assert that Title III is limited to places of public accommodation, meaning physical locations, and therefore does not permit suits centered on employee benefits.

Title III prohibits discrimination by places of public accommodation, as follows:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The question before this court, an issue of first impression in this district, is whether Title III's prohibition is limited to physical places or whether it extends to any commercial good or service.

An initial reading of the statute reflects a limitation based on locality by use of the term "place" of public accommodation. Additionally, the legislative history makes clear that Title III regulates owners and lessees of places and not equality in terms or conditions of employment. *See Leonard F. v. Israel Discount Bank of New York,* 967 F.Supp. 802, 804 (S.D.N.Y.1997) (citing S.Rep. No. 116, 101st Cong., 1st Sess. 58 (1989)).

Further, the statute defines "public accommodation" in terms of physical locations or structures. For example, the statute lists twelve categories of a public accommodations, as follows: (A) inn, hotel, motel; (B) restaurant, bar; (C) motion picture house, theater, concert hall; (D) auditorium, convention center, lecture hall; (E) bakery, grocery store, clothing store; (F) laundromat, dry-cleaner, bank, barber shop; (G) terminal, depot; (H) museum, library, gallery; (I) park, zoo, amusement park; (J) nursery, elementary, secondary, undergraduate, or postgraduate private school; (K) day care center, senior citizen center, homeless shelter; and (L) gymnasium, health spa, bowling alley, golf course. 42 U.S.C. § 12181(7). Thus, all of the public accommodations listed constitute physical places, not goods or services in general. "Moreover, the list of 'public accommodations' in 42 U.S.C. § 12181(7) suggests Title III covers only discrimination against guests, customers, and clients of places held open for service to the general public." *Menkowitz v. Pottstown Mem'l Med. Ctr.,* 154 F.3d 113, 126 (3d Cir.1998).

A plain reading of the statute indicates an intent by Congress to prohibit discrimination, based on physical disability, in *places* that accommodate. An employment disability benefits plan does not constitute a place. Additionally, at least one court has reached the same conclusion. In *Parker v. Metropolitan Life Ins. Co.,* 121 F.3d 1006, 1014 (6th Cir.1997) (*en banc*), the Sixth Circuit ruled that a former employee's challenge of mental versus physical disparity in a long-term disability plan, brought against her former employer and the administering insurance company, did not fall within the purview of Title III of the ADA.

For the above-stated reasons, the court concludes that Title III does not permit

Fennell's suit, which alleges disparity in employment benefit plans for mental versus physical disabilities. Accordingly, the court grants the defendants' motion for summary judgment on Fennell's Title III claim.

## IV. CONCLUSION

Title I of the ADA limits coverage to qualified persons with a disability, meaning those persons who can perform the essential functions of the job either with or without accommodation. Fennell has a mental disability that precludes her from performing her job. Therefore, she does not fall within the protection of the ADA. Accordingly, the court grants the defendants' motion for summary judgment of the EEOC's Title I claim. Title III of the ADA limits coverage to places of public accommodation, meaning physical locations. An employee disability benefits plan does not constitute a place of accommodation. Therefore, Fennell's allegation does not fall within the confines of the ADA. Accordingly, the court grants the defendants' motion for summary judgment of Fennell's Title III claim.