Jane G. **FITTS,** Plaintiff,

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, and UNUM Life Insurance Company of America,** Defendants.

Civil Action No. 98–617(RMU).

United States District Court, District of Columbia.

March 29, 1999.

318

John M. Fedders, Washington, John J. Witmeyer III, Chris Carney, Ford, Mar-rin, Esposito, Witmeyer & Gleser, L.L.P., New York City, for Plaintiff.

Mary Carolyn Cox, Wilmer, Cutler & Pickering, Washington, DC, for Defendant Fannie Mae.

Frank C. Morris, Jr. Teresa L. Jaku-bowski, Epstein, Becker & Green, P.C., Washington, DC, for Defendant Unum.

### MEMORANDUM OPINION

URBINA, District Judge.

**Granting in Part and Denying in Part the Defendants' Motions to Dismiss;**

Striking the Punitive and Compensatory

Damages and the Jury Demand from Count Three; and

Denying the Plaintiff's Motion for Partial Summary Judgment.

## I. INTRODUCTION

This matter arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, and pendent and supplemental claims under the District of Columbia Human Rights Act ("DCHRA"), 2A D.C.Code Ann. §§ 1–2501, *et seq.* (*See* Compl. ¶¶ 2, 3.) The plaintiff, Jane Fitts, suffers from a medical ailment known as bi-polar disorder. (*See* Compl. ¶ 1.) She claims that the Federal National Mortgage Association ("Fannie Mae"), her former employer, and UNUM Life Insurance Company of America ("UNUM"), the insurance company that administers claims made under Fannie Mae's long term disability plan, have unlawfully discriminated against her by classifying her disorder as mental, rather than physical. (*See* Compl. ¶¶ 1, 20.) This classification has the effect of terminating her long-term disability benefits after twenty-four months, rather than at age 65. (*Id.*)

This case comes before the court on Fannie Mae's motion to dismiss, on UNUM's motion to dismiss and to strike

the jury demand, and on the plaintiff's motion for partial judgment. For the reasons stated herein, the court grants in part and denies in part the defendants' motions to dismiss, strikes Count Five from the complaint as it states a form of relief and not a cause of action, and incorporates the plaintiff's request for declaratory judgment into the plaintiff's ERISA claim (Count Three). Additionally, the court strikes the plaintiff's request for punitive and compensatory damages from her ERISA claim (Count Three), and the court strikes the plaintiff's claim for a jury trial as to the ERISA claim. The court denies the plaintiff's motion for summary judgment as to her ERISA claim.

## II. BACKGROUND

The plaintiff worked for Fannie Mae, a federally chartered corporation, until 1995, when her bi-polar disorder caused her to become disabled. (*See* Compl. ¶¶ 4, 17.) She began her legal career with Fannie Mae in 1982, as senior counsel, and worked her way up in Fannie Mae's legal department to the position of Associate General Counsel. (*See* Compl. ¶¶ 1, 6, 7, 16.) Under Fannie Mae's long term disability benefits plan, physically disabled persons receive benefits until age 65, whereas persons with mental, nervous or emotional diseases or disorders receive benefits for a maximum of only 24 months. (*See* Compl. ¶¶ 15, 20.) UNUM, a provider of disability insurance, issued and administered Fannie Mae's long term disability plan. (*See* Compl. ¶¶ 8, 12.)

When the plaintiff became disabled in 1995 she applied for and received short-term disability benefits. (*See* Compl. ¶ 18.) At the termination of her short-term benefits she applied for and began receiving long-term benefits. (*See* Compl. ¶ 19.) Shortly thereafter, UNUM notified the plaintiff that her long-term benefits would end after 24 months, since her bi-polar disorder fell within the mental illness limitation of 24 months. (*See* Compl. ¶ 20.) The plaintiff challenged the termination of

her benefits to both Fannie Mae and UNUM, and UNUM declined to change its determination. (*See* Compl. ¶¶ 21, 22.) The record does not indicate what action, if any, Fannie Mae took in response to the plaintiff's request; however, the record makes clear that the plaintiff did not receive long-term disability benefits beyond the 24–month period.

Thereafter, the plaintiff brought this suit seeking compensatory, exemplary and declaratory relief. (*See* Compl. ¶ 1.) Her complaint contained five counts. Count One asserted a claim under Title I of the ADA; Count Two asserted a claim under Title III of the ADA; Count Three asserted a claim under ERISA; Count Four asserted a claim under the DCHRA; and Count Five claimed breach of contractual and common law duties. Defendant Fannie Mae moved to dismiss the entire complaint, and Defendant UNUM moved to dismiss Counts One, Two, Four and Five of the complaint, to dismiss Count Three to the extent that the plaintiff seeks to recover compensatory and punitive damages, and to strike the plaintiff's demand for a jury trial. The plaintiff moved for partial judgment on Count Three.

## III. DISCUSSION

### A. Legal Standard

#### 1. Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits, but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence. *See Darden v. United States*, 18 Cl.Ct. 855, 859 (1989); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir. 1995), *cert. denied*, 516 U.S. 1071, 116 S.Ct. 771, 133 L.Ed.2d 724 (1996). The court

may dismiss a complaint for failure to state a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). When deciding a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir.1996). However, the court need not accept as true the plaintiffs' legal conclusions. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## 2. Motion for Summary Judgment

The district court may enter summary judgment where the moving party demonstrates that there exists no genuine issue of material fact in dispute and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party has presented a properly supported motion, the nonmoving party must go beyond the pleading to identify evidence that allows a reasonable jury to find in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Drawing from affidavits, depositions, and answers to interrogatories, the nonmovant must identify specific facts indicating that a genuine issue exists for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, the court does not have the function at the summary judgment stage of weighing the evidence; rather, the court must determine whether sufficient evidence exists for a reasonable fact finder to return a verdict in the nonmovant's favor and warrant a trial. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## B. Analysis

### 1. Count One—Title I of the ADA

In their motions for dismissal, both defendants assert that Title I of the ADA does not cover the plaintiff. (*See* Def. Fannie Mae's Mem. in Supp. at 10–13; Def. UNUM's Mem. in Supp. at 14–16.) In this respect, the defendants note that the ADA limits the protection of Title I to a "qualified individual with a disability," 42 U.S.C. § 12112(a), defined as an individual who, with or without reasonable accommodation, can perform the essential functions of the job, 42 U.S.C. § 12111(8). (*See id.*) Because the plaintiff cannot work due to her disability, the defendants argue, she cannot perform her job functions and therefore does not fall within the protections of Title I of the ADA. (*See id.*) The plaintiff argues that Title I does not specify that the plaintiff must be a "qualified individual with a disability" at the time the plaintiff files suit. (*See* Pl.'s Mem. in Opp'n to Defs.' Mots. to Dismiss at 17.)

This court, in the unrelated case of *Fennell v. Aetna*, 37 F.Supp.2d 40 (D.D.C. 1999), recently examined the issue of whether a former employee can bring suit under Title I of the ADA to challenge a disparity in the duration of long-term disability benefits for a physical versus mental disorder. In that case the court concluded that Title I of the ADA does not encompass such suits. Because of the similarities of the two cases, the court applies the reasoning in *Fennell* to the instant case and arrives at the conclusion that the plaintiff does not have a cause of action under Title I of the ADA. A restatement of the court's reasoning in *Fennell* follows.

Neither the Supreme Court nor the District of Columbia Court of Appeals has ruled on the issue of whether a cause of action exists under Title I of the ADA for a former employee seeking to challenge discrimination in disability benefits, and a split exists among the circuits. *See* Blakley, Allison C., *Is Depression Disabling America's Group Insurance Plans? Mental Health Benefit Parity and the ADA*, 27–SUM Brief 40, 41 (1998). In *Equal Employment Opportunity Comm'n v.*

CNA Ins. Cos., 96 F.3d 1039 (7th Cir. 1996), the Equal Employment Opportunity Commission ("EEOC") brought suit asking the court to decide to what extent, if at all, the ADA requires equality of treatment among disabilities in benefit plans. CNA, 96 F.3d at 1041. In that case the former employee, Cynthia Valladares–Toledo, received disability payments for a period of two years because she suffered from a disability caused by a mental or emotional disorder, whereas the long-term insurance plan would have provided disability benefits until age 65 if she had suffered from a physical disability. See CNA, 96 F.3d at 1041. Finding the EEOC's theory "at best, strained," the Seventh Circuit held that a person with the status of "benefit recipient" does not fit within the definition of someone filling an employment position and therefore could not raise a cognizable claim under Title I of the ADA. See CNA, 96 F.3d at 1043–45.

In Ford v. Schering–Plough Corp., 145 F.3d 601 (3d Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 850, 142 L.Ed.2d 704 (1999), the Third Circuit examined the same issue and reached the opposite conclusion. In Ford the Third Circuit ruled that Title I's prohibition against discrimination with respect to terms, conditions and privileges of employment, including fringe benefits, permits former employees to sue their former employers over their disability benefits. Ford, 145 F.3d at 608. In reaching this conclusion, the Third Circuit found the statutory language of the ADA ambiguous in that a plain reading of the language restricted eligibility to sue under Title I to persons who currently work, whereas the statute had the stated intent of covering employment practices including benefits. See Ford, 145 F.3d at 606. To correct for this ambiguity, the Third Circuit read out the "temporal qualifier," i.e., the notion that Title I applied to persons who currently work, by defining the term "qualified individual with a disability" to include "former employees who were once employed with or without reasonable accommodations yet who, at the time of suit, are completely disabled." Ford, 145 F.3d at 606.

In Castellano v. New York, 142 F.3d 58 (2d Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 60, 142 L.Ed.2d 47 (1998), the Second Circuit also faced the issue of whether former employees could challenge post-employment fringe benefits but declined to resolve the issue. Rather than addressing the issue directly, the Second Circuit disposed of the case on the merits after "assuming without deciding" that former employees fell within the classification of qualified individuals (under Title II of the ADA).

■ Upon review of the statute and considering the legislative purpose of the ADA, this court concludes that the holding of CNA squares more closely with the purpose of the ADA than do the holdings of Ford or Castellano. In this respect, Congress enacted the ADA to ensure non-discriminatory treatment in the workplace for disabled individuals, or those with a perceived disability, who could perform the essential functions of their positions. See, e.g., Castellano, 142 F.3d at 68 ("Where the alleged discrimination relates to the provision of post-employment benefits, rather than to hiring, promotion, or firing, Congress's expressed concern about qualifications is no longer implicated.") For this reason, Congress limited ADA coverage to those who fall within the term "qualified individual with a disability," 42 U.S.C. § 12112(a), and Congress defined that term as meaning an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," 42 U.S.C. § 12111(8). Additionally, this court notes that even the Third Circuit reached the conclusion that a plain reading of the statutory language restricted Title I eligibility to persons who currently work. See Ford, 145 F.3d at 606.

■ The court finds the statutory language clear on this point in that a person

who cannot perform the essential functions of the job does not fall within the coverage of Title I of the ADA. Consequently, the court rules that the plaintiff is not a qualified individual with a disability for purposes of coverage under Title I of the ADA. Therefore, the court concludes that it cannot sustain a claim in this case under Title I to challenge the different levels of long-term disability benefits for mental and physical disabilities. Accordingly, the court grants the defendants' motions to dismiss Count One of the complaint.

### 2. Count Two—Title III of the ADA

In Count Two of her complaint the plaintiff alleges a claim of discrimination under Title III of the ADA. In this respect, she notes that section 12182(a) of the ADA prohibits public accommodations from discriminating on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges and advantages or accommodations. *See* 42 U.S.C. § 12182(a); (Compl. ¶ 43). The plaintiff alleges that Fannie Mae and UNUM constitute public accommodations under the statute and that by denying her the same long-term disability benefits afforded to other employees and insureds, the defendants discriminated against her in violation of Title III of the ADA. (*See* Compl. ¶¶ 44, 45, 46 .)

In their motions to dismiss, both defendants assert that they do not fall within the definition of a public accommodation, and therefore the plaintiff may not bring suit against them under Title III of the ADA. (*See* Def. Fannie Mae's Mot. to Dismiss, 16–18; Mem. in Supp. of Def. Unum's Mot. to Dismiss, 24–27.) The plaintiff responds that Title III does not stop at physical barriers but also extends to discrimination in goods, services and privileges without respect to physical places. (*See* Pl.'s Mem. in Opp'n to Defs.' Mots. to Dismiss, 19–20.)

In the *Fennell* case this court also examined the issue of whether a former employee can bring suit under Title III of the ADA to challenge a disparity in the duration of long-term disability benefits for a physical versus mental disorder. This court concluded that Title III of the ADA does not encompass such suits. Again, because of the similarities of the two cases, the court applies the reasoning in *Fennell* to the instant case and arrives at the conclusion that the plaintiff does not have a cause of action under Title III of the ADA. A restatement of the court's reasoning in *Fennell* follows.

Title III prohibits discrimination by places of public accommodation, as follows:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The question before this court, a question the D.C. Circuit has not answered, is whether Title III's prohibition is limited to physical places or whether it extends to any commercial good or service.

■ An initial reading of the statute reflects a limitation based on locality by use of the term "place" of public accommodation. Additionally, the legislative history makes clear that Title III regulates owners and lessees of places and not equality in terms or conditions of employment. *See Leonard F. v. Israel Discount Bank of New York*, 967 F.Supp. 802, 804 (S.D.N.Y.1997) (citing S.Rep. No. 116, 101st Cong., 1st Sess. 58 (1989)).

Further, the statute defines "public accommodation" in terms of physical locations and structures. For example, the statute lists twelve categories of a public accommodations, as follows: (A) inn, hotel, motel; (B) restaurant, bar; (C) motion picture house, theater, concert hall; (D) auditorium, convention center, lecture hall; (E) bakery, grocery store, clothing store; (F) laundromat, dry-cleaner, bank, barber

shop; (G) terminal, depot; (H) museum, library, gallery; (I) park, zoo, amusement park; (J) nursery, elementary, secondary, undergraduate, or postgraduate private school; (K) day care center, senior citizen center, homeless shelter; and (L) gymnasium, health spa, bowling alley, golf course. *See* 42 U.S.C. § 12181(7). Thus, all of the public accommodations listed constitute physical places and structures, not goods or services in general. In this respect, "the list of 'public accommodations' in 42 U.S.C. § 12818(7) suggests Title III covers only discrimination against guests, customers, and clients of places held open for service to the general public." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 126 (3d Cir.1998).

A plain reading of the statute also indicates an intent by Congress to prohibit discrimination, based on physical disability, in *places* that accommodate. An employment disability benefits plan does not constitute a place. Furthermore, in *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir.1997) (*en banc*), the Sixth Circuit ruled that a former employee's challenge of mental versus physical disparity in a long-term disability plan, brought against her former employer and the administering insurance company, did not fall within the purview of Title III of the ADA.

■ The instant case involves Fannie Mae, a federally chartered corporation that provides financial products and services relating to housing, and UNUM, the provider of disability insurance. UNUM issued a long-term disability plan covering Fannie Mae's employees, and Fannie Mae adopted the plan. (*See* Compl. ¶¶ 11, 12.) The plan provides different levels of benefits depending upon whether for a mental versus physical disability, and the plaintiff seeks to have this disparity addressed under Title III of the ADA. Title III, however, covers places of public accommodation, meaning physical locations or structures. The long-term disability plan in question constitutes neither. Consequently, the court concludes that Title III does not permit the plaintiff's suit challenging the disparity in her long-term disability benefits plan for benefits for mental versus physical disorders. Accordingly, the court grants the defendants' motions to dismiss Count Two of the complaint, the Title III claim.

### 3. Count Three—ERISA

#### a. Defendant UNUM's Motion to Dismiss

The plaintiff requests the sum of $2.5 million as compensatory damages and the sum of $2.5 million as punitive damages against Fannie Mae and UNUM, jointly and severally, under Counts One, Two, Three and Four of the complaint. (Compl. at p. 14.) Defendant UNUM moves to dismiss Count Three to the extent that the plaintiff seeks to recover compensatory or punitive damages on the ground that ERISA does not permit such damages. (Def. UNUM's Mot. to Dismiss at 1, 27–28.)

■ Under the civil enforcement provisions of ERISA, a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participants rights under the plan, or to clarify rights to future benefits. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against an administrator's refusal to pay benefits. *See Pilot Life Ins.*, 481 U.S. at 53, 107 S.Ct. 1549. A participant may also bring an action for breach of fiduciary duty and under this cause of action may seek removal of the fiduciary. *See Pilot Life Ins.*, 481 U.S. at 53, 107 S.Ct. 1549. In a civil enforcement action, the court in its discretion may allow an award of attorney's fees to either party. *See Pilot Life Ins.*, 481 U.S. at 53, 107 S.Ct. 1549.

■ A suit for civil enforcement of ERISA does not, however, allow for puni-

tive damages. *See Pilot Life Ins.*, 481 U.S. at 53–54, 107 S.Ct. 1549 (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). "The six carefully integrated civil enforcement provisions found in [ERISA] ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Russell*, at 473 U.S. 146, 105 S.Ct. 3085. Additionally, ERISA does not authorize punitive damages. *See Varity Corp. v. Howe*, 516 U.S. 489, 509, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) ("[ERISA] ... did not authorize the plaintiff's suit for compensatory and punitive damages against an administrator who had wrongfully delayed payment of her benefit claim."); *see also Mertens v. Hewitt Assoc.*, 508 U.S. 248, 260, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (explaining why ERISA does not permit compensatory damages.) The plaintiff has not provided any law to support her claim for punitive and compensatory damages for her ERISA claim. Accordingly, because ERISA does not allow punitive and compensatory damages, the court grants UNUM's motion to strike the plaintiff's request for punitive and compensatory damages from Count Three of the Complaint.

### b. Fannie Mae's Motion to Dismiss

██ Fannie Mae moves to dismiss Count Three of the complaint on the ground that an employer is not a proper party to an action to recover benefits under an ERISA benefit plan, and therefore the complaint fails to state a claim for recovery of benefits against Fannie Mae. (*See* Def. Fannie Mae's Mot. to Dismiss at 19–20.)

Section 1132(d)(2) of ERISA provides that any money judgment awarded under ERISA shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in the person's individual capacity.

*See* 29 U.S.C. § 1132(d)(2). In *Mertens* the Supreme Court held than when an entity becomes a fiduciary the entity becomes liable for damages under ERISA. *See Mertens*, 508 U.S. at 262, 113 S.Ct. 2063. This raises the question of whether Fannie Mae constitutes a fiduciary under the plaintiff's long-term disability plan.

ERISA defines fiduciaries as not only the persons named as fiduciaries by the benefit plan, 29 U.S.C. § 1102(a), but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets, 29 U.S.C. § 1002(21)(A). *See Mertens*, 508 U.S. at 250, 113 S.Ct. 2063. In this respect,

> a person is a fiduciary with respect to a plan to the extend (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

The complaint alleges that while UNUM issued the long-term disability policy and administered the long-term disability plan, Fannie Mae adopted the plan. (*See* Compl. ¶¶ 11, 12.) Further, the plaintiff applied to both Fannie Mae and UNUM for disability benefits, (*see* Compl. ¶ 19), and after receiving notification of the decision to terminate her benefits after 24 months, the plaintiff contested the decision to the Chief Executive Officers of Fannie Mae and UNUM, (*see* Compl. ¶ 22). Lastly, the complaint alleges that both Fannie Mae and UNUM terminated the plaintiff' long-term disability benefits. (*See* Compl. ¶ 24.) Drawing all reasonable inferences in favor of the plaintiff, *see Antonelli*, 81

F.3d at 1427, the court concludes that the plaintiff has set forth facts that, if proved consistent with the allegations contained in the complaint, would show that Fannie Mae falls within the definition of a fiduciary. In this respect, the court notes that Fannie Mae adopted the plan and terminated the plaintiff's long term disability benefits under the plan.

ERISA places a number of detailed duties and responsibilities on fiduciaries, including the avoidance of conflicts of interest. *See Mertens*, 508 U.S. at 252–253, 113 S.Ct. 2063. Further, ERISA makes fiduciaries liable for breach of these duties. *See Mertens*, 508 U.S. at 252–253, 113 S.Ct. 2063 (citing 29 U.S.C. § 1109(a)). The complaint alleges that a conflict of interest existed because Fannie Mae's future premiums for the policy hinged upon allowed claims, both in terms of types of claims and dollar amount; therefore every claim that UNUM denied represented a claim that Fannie Mae did not have to pay for in future premiums. (*See* Compl. ¶¶ 13, 14.) As administrator of the plan, Fannie Mae had authority to make eligibility determinations. Further, while Fannie Mae may have delegated to UNUM the authority to make an eligibility determination concerning the plaintiff's claim, Fannie Mae still retains the ultimate control over the decision-making process. Accepting all of the facts alleged in the complaint as true and drawing all inferences in the light most favorable to the plaintiff, *see Antonelli*, 81 F.3d at 1427, the court finds that the plaintiff has set forth facts that, if proved consistent with the allegations in the complaint, could establish that a potential for a conflict of interest existed. In this respect, the court notes that Fannie Mae stood to benefit economically (through lower future premiums) by the classification of the plaintiff's disorder so as to limit her disability benefits to 24 months.

Consequently, because the complaint alleges facts that, if proved, could establish that Fannie Mae potentially stood in a conflict of interest position regarding the classification of the plaintiff's disorder, and because the complaint alleges facts that, if proved, could establish that Fannie Mae, together with UNUM, limited the plaintiff's long-term disability benefits to 24 months by classifying her disorder as mental, the court resolves that the complaint states a claim for relief in Count Three under ERISA against Fannie Mae. Accordingly, the court denies Fannie Mae's motion to dismiss Count Three of the complaint.

### 3. The Plaintiff's Motion for Summary Judgment

The plaintiff asserts that the long-term disability plan, when "properly construed," provides physical disability benefits for bi-polar disorders. (*See* Pl.'s Mot. for Partial Summ. J. at 12.) The plaintiff advances two theories in support of this assertion. First, she argues that bi-polar disorder constitutes a physical disorder. Second, she argues that the plan's definition for "mental illness" could mean a disability caused purely by a behavioral disturbance with no demonstrable organic or physical basis. (*See* Pl.'s Mem. for Partial Summ. J. at 12–13.) The court will analyze these allegations under ERISA and the "federal common law of rights and obligations under ERISA-regulated plans." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

The first step in the analysis of an ERISA action is the so-called "Standard of Review" issue, *i.e.*, the manner in which the court shall review the claim. Mark Ostrich, *ERISA Litigation: What to Do About Standard of Review?*, 38 La. B.J. 327, 327 (1991). In *Firestone*, the seminal case on the standard of review for deciding ERISA claims, the Supreme Court held that when a plan participant brings suit challenging the denial of benefits, the court must review the decision *de novo* unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan. *See Firestone*, 489 U.S. at 115, 109 S.Ct. 948.

■ To determine whether the administrator has discretion, the D.C. Circuit has instructed the courts to review the plan documents themselves. *See Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1453–54 (D.C.Cir.1992). "(I)t ... need only appear on the face of the plan documents that the fiduciary has been given (the) power to construe disputed or doubtful terms—or to resolve disputes over benefits eligibility—in which case the trustee's interpretation will not be disturbed if reasonable." *Pitney Bowes*, 952 F.2d at 1453–54 (quoting *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1187 (4th Cir.1989) (internal quotations omitted)).

In *Firestone* the defendant, Firestone Tire and Rubber Company ("Firestone"), sold the five plants comprising its plastics division to Occidental Petroleum Company ("Occidental"). *See Firestone*, 489 U.S. at 105, 109 S.Ct. 948. The plaintiffs, former Firestone employees whose employment continued with Occidental, applied to Firestone for severance benefits under Firestone's employee termination pay plan. *See Firestone*, 489 U.S. at 105, 109 S.Ct. 948. As administrator of the plan, Firestone denied termination benefits to its former employees on the ground that the sale of the plastics division plants did not constitute a reduction in work force within the meaning of the plan. *See Firestone*, 489 U.S. at 105, 109 S.Ct. 948. The Court ruled that Firestone did not exercise discretionary authority because the plan documents did not indicate that Firestone had the power to construe uncertain terms or that eligibility determinations were to be given deference. *See Firestone*, 489 U.S. at 111, 109 S.Ct. 948.

■ Unlike the plan administrator in the *Firestone* case, in the instant case the plan documents grant discretionary authority to Fannie Mae. Section 7.01 of the plan provides that the Fannie Mae Benefit Plans Committee ("Committee") shall have general responsibility for the administration and interpretation of the plan. (*See* Def. UNUM's Opp'n to Pl.'s Mot. for Summ. J., Ex. 1 at 3, 15 ("General Rules and Regulations . Governing the Federal National Mortgage Association Flexible Benefits Plan").) These duties include determining eligibility for the plan and reviewing the disposition of claims for benefits under the plan. (*See id.* at 15.) Additionally, section 7.01 provides that all decisions, interpretations, determinations and other actions of the Committee shall have the maximum deference allowed by law. (*See id.* at 15.)

■ Because the plan grants the administrator power to interpret the plan, and because the plan states that eligibility determinations shall receive deference, the court finds that the plan in the instant case contains the exact language granting discretionary authority that the *Firestone* court found lacking in Firestone's termination pay plan. On this basis, the court concludes that Fannie Mae's plan granted discretionary authority to the plan administrator. Accordingly, the court shall apply a "deferential standard of review." *Firestone*, 489 U.S. at 111, 109 S.Ct. 948. The *Firestone* court also held that if the benefit plan gives discretion to an administrator or fiduciary who operates under a conflict of interest, the court must weigh that conflict as a factor in determining whether an abuse of discretion occurred. *See Firestone*, 489 U.S. at 115, 109 S.Ct. 948 (citing Restatement (Second) of Trusts § 187, cmt. d (1959)). In the instant case the court has determined that the complaint sets forth allegations that, if proved, could establish that Fannie Mae operated under a potential conflict of interest. Accordingly, the court shall weigh this as a factor in evaluating the administrator's determination.

The D.C. Circuit has termed this deferential standard of review the "arbitrary and capricious standard." *Pitney Bowes*, 952 F.2d at 1452. "The key to the arbitrary and capricious standard is that if

there is more than one action that is considered 'reasonable,' the Court must not overturn a decision found to be reasonable, even if an alternative decision also could have been considered reasonable." *Pitney Bowes*, 952 F.2d at 1452 (internal quotations omitted).

As indicated earlier, UNUM acted as claims administrator for the long-term disability plan. (*See also* Def. UNUM's Opp'n to Pl.'s Mot. for Summ. J., Ex. 2 ("Plan Directory") (listing UNUM as claims administrator for the long-term disability portion of Fannie Mae's Flexible Benefits Plan).) When reviewing the plaintiff's claim for disability benefits, UNUM's claims specialist obtained the evaluation of a staff psychiatrist, who concluded that the plaintiff had a mental illness. (*See* Def. UNUM's Opp'n to Pl.'s Mot. for Summ. J., Donelli Decl. ¶¶ 1, 3, 5–6.) Specifically, the staff psychiatrist, a medical doctor specializing in psychiatry and emergency medicine, concluded that the plaintiff's bi-polar disorder satisfied the Diagnostic and Statistical Manual of Mental Disorders criteria for psychiatric illness. (*See* Def. UNUM's Opp'n to Pl.'s Mot. for Summ. J., Haines Decl. ¶¶ 1, 5–6.)

The policy defines "mental illness" as "mental, nervous or emotional diseases or disorders of any type." (*See* Def. UNUM's Opp'n to Pl.'s Mot. for Summ. J., Ex. (Unionmutual Policy).) Based on the staff psychiatrist's report and on the claims specialist's understanding that the policy provision regarding mental illness applies to those conditions identified in the Diagnostic and Statistical Manual of Mental Orders, the claims specialist determined that the plaintiff fell within the 24–month limitation of disability benefits. (*See* Donelli Decl. ¶ 6.)

The claims specialist cleared his determination to classify the plaintiff's disorder as mental with a "fail safe" panel, which consisted of the manager on duty and a vocational expert. (*See* Donelli Decl. ¶ 7.) When the entire panel agreed with the claims specialist that the medical information supported the conclusion that the plaintiff's disability fell within the policy's definition of mental, UNUM notified the plaintiff of the policy's 24–month mental illness limitation. (*See id.* ¶¶ 7–8.)

Based on this record, the court concludes that the plaintiff has failed to establish that no genuine issue of material fact exists and that UNUM did not come to reasonable determination on the plaintiff's claim for long-term disability benefits. The facts indicate that UNUM made its determination based on the underlying opinion of a trained medical professional, the use of the criteria established in the Diagnostic and Statistical Manual of Mental Disorders, and the review of the "fail safe panel." The court reaches this conclusion under each of the two theories the plaintiff advances under her ERISA claim.[1] Because the plaintiff has not established that UNUM acted unreasonably, the court may not overturn UNUM's decision. *See Pitney Bowes*, 952 F.2d at 1452. For this reason, the court denies the plaintiff's motion for summary judgment on the ERISA claim.

### 4. Count Four—DCHRA

Both defendants move to dismiss the DCHRA claim on preemption grounds. (*See* Def. Fannie Mae's Mot. to Dismiss at 24; *accord* Def. UNUM's Mot. to Dismiss at 32.) ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (citing 29

---

1. The plaintiff submitted her own declaration and that of expert medical witnesses to support the contention that UNUM should have classified her disorder differently. Because the court did not review UNUM's determination *de novo*, the court did not address the issue of whether other reasonable interpretations could exist as to the medical evidence and the plan's terms. Accordingly, the court denies as moot Defendant UNUM's motion to strike the declarations of the plaintiff and the plaintiff's experts.

U.S.C. § 1144(a)). Congress enacted the preemption statute to ensure that plans and plan sponsors would be subject to a uniform body of benefits law. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). "[T]he goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *Ingersoll–Rand,* 498 U.S. at 142, 111 S.Ct. 478.

Count Four claims that the defendants violated section 1–2512 of the DCHRA, which makes it unlawful for an employer to engage in a discriminatory practice against an employee on the basis of disability. (*See* Compl. ¶ 55.) In this respect, the plaintiff claims that the defendants discriminated against her by denying her equal benefits, on the basis of her alleged mental disability, while at the same time providing superior benefits to those employees who suffered from a physical disability. (*See* Comp. ¶ 56.)

■ The first issue, then, is whether the plaintiff's claim "relates to" her employee benefit plan. *See* Teresia B. Jovanovic, *Pre–Emption of State Fair Employment Laws Under Provisions of § 514 of Employee Retirement Income Security Act,* 72 A.L.R. Fed 489 (1985); *cf. Shaw,* 463 U.S. at 96, 103 S.Ct. 2890. A law relates to an employee benefit plan, in the ERISA context, if it has a connection with or reference to such a plan, *see Shaw,* 463 U.S. at 96–97, 103 S.Ct. 2890, for example: a state's human rights law requiring disability benefits for pregnant employees related to the plan and therefore violated ERISA, *see Shaw,* 463 U.S. at 97, 103 S.Ct. 2890; state tort and contract law claims, grounded on the allegation that an employer fired the plaintiff to avoid making pension plan contributions, related to a benefits plan, *see Ingersoll–Rand,* 498 U.S. at 142, 111 S.Ct. 478; a claim to enjoin the enforcement of a state law requiring equivalent health insurance coverage for injured employees related to an ERISA plan, *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 130, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992).

Additionally, common law causes of action based on alleged improper processing of claims for benefits "undoubtedly meet the criteria" for relating to an employee benefit plan. *See Pilot Life Ins.,* 481 U.S. at 48, 107 S.Ct. 1549. However, a claim under a state law requiring payment of prevailing wages to employees in apprenticeship programs did not relate to a benefit plan, because the law regulated only the wages. *See California Div. of Labor Standards Enforcement v. Dillingham Constr.,* 519 U.S. 316, 329, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (concluding that the state law did not relate to the plan because it did not bind the plan administrator to any particular choice and thus did not function as a regulation of the plan).

In the instant case the plaintiff seeks to require that the Fannie Mae plan provide the same level of disability benefits to mentally disabled persons as it does for physically disabled persons. (*See* Compl. ¶ 56.) Her claim without a doubt has a connection with and reference to her plan. *See Shaw,* 463 U.S. at 96–97, 103 S.Ct. 2890. Further, the plaintiff's claim would eliminate Fannie Mae's choice to structure its benefits plan in the way that it has deemed appropriate. *Cf. New York State Conference of Blue Cross & Blue Shield v. Travelers Ins. Co.,* 514 U.S. 645, 658, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (holding that ERISA preempts state laws that mandate particular employee benefits structures or their administration). Because of this connection to the plan, the court concludes that the plaintiff's DCHRA claim relates to the plan.

If a state law relates to an employee benefit plan, ERISA preempts it. *Pilot Life Ins.,* 481 U.S. at 45, 107 S.Ct. 1549. ERISA preempts any state law that refers to or has a connection with covered benefits plans "even if the law is not specifically designed to affect such plans or the effect

is only indirect." *Greater Washington Bd. of Trade,* 506 U.S. at 129–130, 113 S.Ct. 580 (internal quotations omitted). Because Count Four attempts to use the DCHRA to rewrite the terms of the Fannie Mae employee benefits plan, as it relates to benefit levels for persons with mental versus physical disabilities, the court rules that it is pre-empted by ERISA. Therefore, the court concludes that Count Four fails to state a claim upon which relief may be granted. *See* Fed. R.Civ.P. 12(b)(6). Accordingly, the court grants the defendants motions to dismiss Count Four.

#### 5. Count Five—Declaratory Judgment

In the introductory portion of the complaint the plaintiff asserts that the court has pendent and supplemental jurisdiction over Count Five for breach of contractual and common law duties "as hereinafter more fully alleged." (Compl.¶ 3.) The remainder of the complaint, however, mentions no statutory or common law basis for declaratory judgment. (*Cf.* Compl. ¶¶ 59–69.) In Count Five the plaintiff seeks a determination that her bi-polar disorder and the damages occasioned by electroconvulsive shock therapy constitute a physical illness, not a mental illness. (*See* Compl. ¶ 67.) In the alternative, the plaintiff in Count Five seeks a determination that the plan's definition of mental illness is vague and ambiguous and that the policy limitations are thus unenforceable. (*See* Compl. ¶ 67.) The defendants move to dismiss this claim on the ground that ERISA preempts such claims. (*See* Def. Fannie Mae's Mot. to Dismiss at 28–29; Def. UNUM's Mot. to Dismiss. at 33.)

A request for declaratory judgment constitutes a form of relief, not a cause of action. *See Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 92 (6th Cir.1997). Under the civil enforcement provisions of ERISA, a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participants rights under the plan, or to clarify rights to future benefits. *See Pilot Life Ins.,* 481 U.S. at 53, 107 S.Ct. 1549. Further, relief may take the form of accrued benefits due, a declaratory judgment of entitlement to benefits, or an injunction against an administrator's refusal to pay benefits. *See Pilot Life Ins.,* 481 U.S. at 53, 107 S.Ct. 1549.

Thus, to the extent that the plaintiff seeks declaratory judgment under ERISA to clarify her rights to future benefits, the plaintiff may pursue that claim under Count Three of the complaint. However, to the extent that she seeks declaratory judgment to clarify her rights to benefits under contractual and common law duties, ERISA preempts state law actions and therefore does not permit such a claim.

Accordingly, the court grants the defendants' motions to dismiss to the extent that the plaintiff seeks declaratory judgment under state law actions of breach of contract and common law duties, and the court denies the defendants' motions to dismiss Count Five to the extent that the plaintiff seeks declaratory judgment under her ERISA claim. Further, the court strikes Count Five of the complaint as it states a form of relief and not a cause of action, and the court incorporates the plaintiff's request for declaratory judgment into Count Three of the complaint.

### C. Motion to Strike Jury Demand

Defendant UNUM moves to strike the plaintiff's request for a jury trial on the ground that ERISA does not authorize jury trials. (*See* Def. UNUM's Mot. to Dismiss. at 33–34.) While the D.C. Circuit has not ruled on the issue, the circuits that have ruled have concluded that ERISA does not permit jury trials. *See, e.g., Houghton v. SIPCO, Inc.,* 38 F.3d 953, 957 (8th Cir.1994) (holding that the district court committed error by submitting ERISA claims to a jury); *Borst v. Chevron Corp.,* 36 F.3d 1308, 1324 (5th Cir.1994) (finding the plaintiffs' ERISA claim equitable in nature), *cert. denied,* 514 U.S. 1066, 115 S.Ct. 1699, 131 L.Ed.2d 561 (1995);

*Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1258 (2d Cir.1996) ("[T]his Court now joins its sister circuits and decides that there is no right to a jury trial in a suit brought to recover ERISA benefits.").

■ Based on the overwhelming weight of authority, the court concludes that ERISA does not permit the plaintiff to have her ERISA claim, which sounds in equity, decided by a jury. Accordingly, the court grants Defendant UNUM's motion to strike the plaintiff's jury demand for Count Three (the only remaining count).

## IV. CONCLUSION

For the foregoing reasons, the court dismisses the plaintiff's claims made under Titles I and III of the ADA (Counts One and Two) and dismisses her DCHRA claim (Count Four). Additionally, the court grants the defendants' motions to dismiss the plaintiff's request for declaratory judgment (Count Five) to the extent that the plaintiff seeks declaratory judgment under state law theories of breach of contract and common law duties, and the court denies the defendants' motions to dismiss to the extent that the plaintiff seeks declaratory judgment under her ERISA claim.

The court further strikes Count Five from the complaint as it states a form of relief and not a cause of action, and the court incorporates the plaintiff's request for declaratory judgment into the plaintiff's ERISA claim (Count Three). Additionally, the court strikes the plaintiff's request for punitive and compensatory damages from her ERISA claim (Count Three), and the court strikes the plaintiff's claim for a jury trial as to the ERISA claim.

The court denies Fannie Mae's motion to dismiss the plaintiff's ERISA claim. The court denies the plaintiff's motion for summary judgment as to her ERISA claim.