Jane G. FITTS, Appellant,

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION and Unum Life Insur-
ance Company of America, Appellees.

No. 99–5327.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 13, 2000.

Decided Jan. 12, 2001.

John J. Witmeyer III argued the cause for appellant. With him on the briefs was David E. Schreiber.

M. Carolyn Cox argued the cause for appellee Federal National Mortgage Association. With her on the brief was Craig Goldblatt.

Frank C. Morris, Jr. argued the cause for appellee Unum Life Insurance Company of America. With him on the brief was Ann M. Courtney.

Before: EDWARDS, Chief Judge, ROGERS and GARLAND, Circuit Judges.

Opinion for the court filed PER CURIAM.

PER CURIAM:

Jane G. Fitts sued her former employer and the insurance company that administers claims under the employer's long-term disability plan, alleging that they violated the Americans with Disabilities Act of 1990 (ADA) and the Employee Retirement Income Security Act of 1974 (ERISA) by terminating her disability benefits after 24 months. The district court dismissed Fitts' ADA counts and granted summary judgment against her on the ERISA count. We affirm the dismissal of the ADA counts on the ground that the long-term disability plan comes within the safe harbor provisions of that statute. Because we conclude that the district court applied the wrong standard of review to the ERISA count, however, we reverse the grant of summary judgment and remand the case for further proceedings.

I

Under its employee welfare benefit plan, the Federal National Mortgage Association ("Fannie Mae")[1] offers its employees the opportunity to select from an array of benefits, including a long-term disability insurance policy provided by Unum Life Insurance Company of America. In the event that an employee insured under the policy later becomes totally disabled, the policy pays a percentage of the employee's income until the age of 65. The policy, however, places a 24–month cap on benefits for disabilities due to mental illness, which it defines as "mental, emotional or nervous diseases or disorders of any type."

Jane Fitts, an attorney, was employed by Fannie Mae from 1982 to 1995 and paid the required premiums for the long-term disability policy. In 1995, Fitts became disabled by bipolar disorder, an illness characterized by cycles of depressive and manic episodes. See AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 395 (4th ed. text rev. 2000). Fitts applied to Unum for benefits under the policy, which Unum granted. Because Unum classified her disorder as a mental illness, however, it limited her benefits to 24 months. Fitts unsuccessfully protested Unum's decision, arguing that bipolar disorder is associated with changes in the physical structure of the brain and often runs in families, suggesting genetic causation. Unum asserts that it invited Fitts to submit additional medical information supporting her claims, but that she responded only with "conclusory" letters from her treating psychiatrist and two other psychiatrists. Fitts asserts that she signed a release permitting Unum to view her entire medical file, which contained data supporting her claim. Unum refused to alter its classification of bipolar disorder as a mental illness and ceased paying Fitts benefits after 24 months.

1. Fannie Mae is a federally-chartered, private corporation that facilitates the secondary market in residential mortgages. Federal National Mortgage Association Charter Act, 12 U.S.C. § 1716b.

Fitts sued both Unum and Fannie Mae, contending that the termination of her benefits after 24 months violated Titles I and III of the ADA, 42 U.S.C. §§ 12101–12213. Title I prohibits a covered employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a). Fitts also claimed that the termination of her benefits violated ERISA, 29 U.S.C. §§ 1001–1461, which entitles a participant or beneficiary of a covered plan "to recover benefits due to him under the terms of his plan," 29 U.S.C. § 1132(a)(1)(B).[2]

■ Pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court dismissed Fitts' claim under Title I of the ADA because, as a totally disabled individual, she was not a "qualified individual with a disability" eligible to sue under Title I. *Fitts v. Federal Nat'l Mortgage Ass'n*, 44 F.Supp.2d 317, 322–23 (D.D.C. 1999). The court also dismissed Fitts' claim under Title III of the ADA, finding that the long-term disability policy was not a good or service provided by a public accommodation and hence that neither Fannie Mae nor Unum was subject to suit under that Title. *Id.* at 324. Finally, the court granted Unum's motion for summary judgment on Fitts' ERISA claim, ruling that Unum had not acted in an arbitrary and capricious manner in classifying bipolar disorder as a mental illness. *Fitts v.*

*Federal Nat'l Mortgage Ass'n*, 77 F.Supp.2d 9, 24 (D.D.C.1999). We review both the dismissal of the ADA claims and the grant of summary judgment on the ERISA claim de novo. *See Systems Council EM–3 v. AT&T Corp.*, 159 F.3d 1376, 1378 (D.C.Cir.1998); *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 492 (D.C.Cir.1998).

## II

In *EEOC v. Aramark Corp.*, 208 F.3d 266 (D.C.Cir.2000), plaintiffs challenged an employee benefit plan that provided 24 months of long-term disability benefits for persons with disabilities caused "to any extent" by mental conditions, but a longer benefit period for those with physical disabilities. As Fitts does here, the *Aramark* plaintiffs contended that the early termination of disability benefits violated Titles I and III of the ADA. The district court dismissed the *Aramark* plaintiffs' claims for the same reasons relied upon by the district court here. On appeal, we declined to address the district court's reasons, affirming instead on a different ground—that the challenged plan was protected by the ADA's safe harbor for bona fide employee benefit plans. *Aramark*, 208 F.3d at 268. That provision, contained in ADA § 501(c), states:

> Subchapters I through III of this chapter and title IV of this Act shall not be construed to prohibit or restrict—
>
> > (1) an insurer . . . or any agent, or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based

---

**2.** In addition, Fitts asserted claims under the District of Columbia Human Rights Act (DCHRA), D.C.Code § 1–2501 *et seq.,* and District of Columbia common law. The district court dismissed those claims. Fitts did not appeal the dismissal of her common law claims and has not argued the DCHRA issue in her briefs. Accordingly, neither is before us on this appeal. *See* Fed. R.App. P. 28(a)(9) (brief must "contain appellant's contentions and the reasons for them"); *see also Artis v. Greenspan*, 158 F.3d 1301, 1302 n. 1 (D.C.Cir. 1998) (issues listed but not briefed may be deemed waived). The one sentence Fitts provides on the DCHRA issue in her reply brief is insufficient, and we would not in any event consider an argument raised for the first time in a reply brief. *See Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 196 (D.C.Cir.1992).

on or not inconsistent with State law; or

(2) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or

(3) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that is not subject to State laws that regulate insurance.

Paragraphs (1), (2), and (3) shall not be used as a subterfuge to evade the purposes of subchapter[s] I and III of this chapter.

42 U.S.C. § 12201(c).

The *Aramark* parties agreed that the benefit plan came within the language of § 501(c)(3), because it was "bona fide in that it exists and pays benefits," 208 F.3d at 269 (quoting *Public Employees Ret. Sys. of Ohio v. Betts,* 492 U.S. 158, 166, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989)), and because the preemption provisions of ERISA rendered it "not subject to State laws that regulate insurance," *id.* (quoting 42 U.S.C. § 12201(c)(3)). Plaintiffs argued, however, that the plan failed to qualify for safe harbor because it was a "subterfuge." *Id.* We disagreed, holding that because Aramark's long-term disability benefit plan, including the 24–month cap on mental disability benefits, had been in place since 1982—long before the ADA's 1990 enactment—the 24–month benefit limit could not fall within § 501(c)'s subterfuge exception to the safe harbor. *Aramark,* 208 F.3d at 269–70.

At Fitts' request, her appeal was held in abeyance pending the decision in *Aramark.* The parties have fully briefed the safe harbor issue, including the applicability of *Aramark* to the instant case. We conclude that *Aramark* controls here and requires that we affirm the dismissal of Fitts' ADA claims.

Like the plaintiffs in *Aramark,* Fitts does not dispute that Fannie Mae's long-term disability plan, as implemented through the Unum policy, comes within the language of § 501(c)(3) as a bona fide benefit plan not subject to state law because of ERISA preemption. Fitts does contend that the plan is a "subterfuge," but in light of *Aramark* that argument is unavailing: Fitts concedes that the 24–month cap on disability benefits for mental illness has been in place—without modification—since at least 1985. Although Fitts argues that the intentional *retention* of the cap since the 1990 passage of the ADA renders the subterfuge provision applicable, adoption of such a theory would eviscerate the rule announced in *Aramark.* Accordingly, we conclude that Fannie Mae falls within the protection of the safe harbor provision of § 501(c)(3).

Unum is likewise eligible for safe harbor protection, although as the insurer it is protected under § 501(c)(1) rather than (c)(3). Subsection (c)(1) requires both that the long-term disability plan not be a subterfuge to evade the purposes of the ADA and that it not be "inconsistent with State law." The record contains an uncontested declaration that the Unum policy was approved by the District of Columbia Department of Insurance and Securities Regulation, J.A. at 30, and Fitts cites no District of Columbia case or statute with which the plan is inconsistent. Accordingly, we affirm the dismissal of appellant's ADA claims against both Fannie Mae and Unum.

III

Under ERISA, a participant in or beneficiary of a covered plan may sue "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Fitts contends that Unum and Fannie Mae improperly classified her disability as mental rather than physical, and hence im-

properly terminated her long-term disability benefits after only 24 months. The district court concluded that the appropriate standard of review for that classification was whether it was arbitrary and capricious, determined that it was not, and granted summary judgment for defendants.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that a denial of benefits challenged under ERISA § 1132(a)(1)(B) is to be reviewed under a de novo standard—not under the more deferential arbitrary and capricious standard—"unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115, 109 S.Ct. 948. Firestone's employee benefit plan provided severance benefits for employees "if released because of a reduction in work force or if ... physically or mentally unable to perform [the] job." *Id.* at 105–06, 109 S.Ct. 948. The Court held that those provisions did not require that the administrator's eligibility determinations be given deference. *Id.* at 111–12, 109 S.Ct. 948.

■ Unum contends that, as the claims administrator of the long-term disability policy, it has discretionary authority to determine benefits eligibility because the policy requires the insured to submit proof of disability. Such a requirement, Unum asserts, necessarily gives the insurer discretion because it must evaluate the legitimacy of the proof submitted. Unum Br. at 10. As Unum conceded at oral argument, however, virtually all insurance policies require proof of eligibility before the dispensation of benefits—hardly a surprising fact, since insurance companies are not in the business of giving away money to anyone who requests it. Accordingly, if we were to regard any plan that requires proof of eligibility as conferring discretion, *Firestone*'s exception would swallow its rule and render the standard of review deferential in almost every case. As Unum's argument would effectively circumvent the Supreme Court's decision, we cannot accept it.[3]

As a fallback, Unum points out that under Fannie Mae's Flexible Benefits Plan, of which the long-term disability insurance plan is a part, the company's Benefit Plans Committee is designated the Plan Administrator, § 2.01(e), and is to "be afforded maximum deference allowed by law" in all of its "decisions, interpretations [and] determinations," § 7.01. The Plan further provides that the Committee "*may*" delegate its authority to "outside consultants or companies," including "those matters involving the exercise of discretion." § 7.03 (emphasis added). Unum contends that "by purchasing and incorporating into its plan the terms of the long-term disability policy, which itself grants Unum discretion, Fannie Mae in fact did delegate discretionary authority to Unum." Unum Br. at 9.

■ First, as we have noted above, the policy does *not* grant Unum discretion; hence the purchase and incorporation of the policy into the benefits plan establishes nothing. Nor is there any other indication that Fannie Mae (or, more precisely, the

---

3. Most circuits that have considered the issue have concluded that the mere requirement of proof of eligibility does not confer discretion upon an administrator. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332 (7th Cir.2000) ("That the plan administrator will not pay benefits until he receives satisfactory proof of entitlement ... states the obvious, echoing standard language in insurance contracts not thought to confer any discretionary powers on the insurer."); *see also Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 524 (4th Cir.2000); *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir.1999); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089–90 (9th Cir.1999) (en banc). Unum relies heavily on the Sixth Circuit's decision in *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550 (6th Cir.1998). The policy at issue there, however, did not simply require proof of eligibility but "satisfactory" proof. No such language appears in Unum's policy. Moreover, *Perez*'s view has been rejected by the above-cited circuits.

**6**

Committee) has delegated any discretionary authority to Unum to determine eligibility.[4] Finally, there is no "decision[ ], interpretation[ ] [or] determination[ ]" by Fannie Mae itself at issue here. Fannie Mae has renounced its own discretionary authority with respect to disability benefits determinations. *See* Fannie Mae Br. at 11. At oral argument, the parties agreed that Fannie Mae exercised no discretion with respect to the eligibility determination in this case, and further agreed that there is no appeal to Fannie Mae from Unum's disability benefit determinations. Thus, neither Unum nor Fannie Mae exercised the discretion that would justify the application of arbitrary and capricious review.

For the foregoing reasons, we conclude that Unum's classification of Fitts' illness as mental rather than physical must be reviewed de novo. We do not, however, proceed with the de novo review ourselves, because numerous factual disagreements persist. Fitts contends that if Unum's classification is reviewed de novo, the record will demonstrate that her disability is physical; Unum asserts the contrary. Fitts contends that current medical research on bipolar disorder supports her claim; Unum argues that there is no such medical consensus. Unum asks us to rule on a motion to exclude certain items of evidence proffered by the plaintiff; Fitts argues that the evidence is admissible. Although the de novo standard might theoretically permit this court to perform the necessary review, the intensely factual nature of the record counsels that we return the case for the district court's examination. In light of the change in the standard of review, the parties will be free to supplement the existing record by, inter alia, submitting current medical evidence regarding bipolar disorder.

**IV**

We affirm the district court's dismissal of Fitts' claims under the ADA on the ground that the long-term disability plan is protected by the statute's safe harbor provision. We reverse the court's grant of summary judgment on the ERISA claim, however, and remand for de novo review of Unum's classification of Fitts' disability as a mental illness.

---

**4.** Indeed, section 7.10(d) of the Plan provides that "notwithstanding any other provision of this section 7, claims with respect to the benefits provided under an insurance contract ... shall be made and reviewed under the terms of such contract." As discussed, the terms of the long-term disability policy do not confer discretion on Unum.