20-4233-cr
United States v. Tyrone Woolaston

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 29th day of March, two thousand twenty-two.

Present:     ROSEMARY S. POOLER,
             ROBERT D. SACK,
             MYRNA PÉREZ,
                     *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

     *Appellee*,

     v.                                                                  20-4233-cr

TYRONE WOOLASTON,

     *Defendant-Appellant*.[1]

_____

Appearing for Appellant:     Robert Lewis, Shearman & Sterling LLP (Christopher L. LaVigne, *on the brief*), New York, N.Y.

Appearing for Appellee:      Nathan Rehn, Assistant United States Attorney (Alison Moe, David Abramowicz, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, N.Y.

---

[1] The Clerk of Court is directed to amend the caption as set forth above.

Appeal from the United States District Court for the Southern District of New York (Nathan, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Tyrone Woolaston appeals from a judgment of conviction entered on December 18, 2020 by the United States District Court for the Southern District of New York (Nathan, *J.*). Following a trial before Judge Robert W. Sweet, a jury convicted Woolaston of conspiracy to distribute and possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846 ("Count One"), and of using and carrying a firearm in furtherance of the conspiracy charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count Two"). Judge Alison J. Nathan, assigned to the case after Judge Sweet's death, denied Woolaston's post-trial motions for a judgment of acquittal and for a new trial. *United States v. Woolaston*, No. 18-cr-212 (AJN), 2020 WL 91488 (S.D.N.Y. Jan. 7, 2020). Judge Nathan then sentenced Woolaston to 120 months' imprisonment on Count One and a consecutive term of 60 months' imprisonment on Count Two, followed by five years of supervised release. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

## I. Venue

Woolaston argues that there was insufficient evidence of venue in the Southern District of New York ("S.D.N.Y."), and that Judge Sweet erred in instructing the jury on venue. We disagree.

In a conspiracy case like this one, "venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators." *United States v. Svodoba*, 347 F.3d 471, 483 (2d Cir. 2003) (internal quotation marks omitted). "Because venue is not an element of a crime, the government need establish it only by a preponderance of the evidence." *United States v. Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005). We review the sufficiency of venue evidence "*de novo*, considering the evidence in the light most favorable to the government," *United States v. Davis*, 689 F.3d 179, 185 (2d Cir. 2012), and "deferring to the jury's assessments of the witnesses' credibility," *United States v. Allah*, 130 F.3d 33, 45 (2d Cir. 1997).

The government introduced evidence that two overt acts occurred in S.D.N.Y. First, Xavier Williams testified that in 2013, he drove Woolaston from New Jersey to Queens to meet with a customer of Woolaston's alleged cocaine-trafficking operation to "work[] on another drug shipment." App'x at 671. An investigative analyst testified that there was no practical way to make this drive without passing through Manhattan, the Bronx, or the Verrazzano-Narrows Bridge, all of which are in S.D.N.Y. *See United States v. Kirk Tang Yuk*, 885 F.3d 57, 72 (2d Cir. 2018). This evidence of a trip through S.D.N.Y. to further the charged conspiracy suffices to sustain venue there. *Id.* Woolaston objects that the details of this meeting were "beyond slender," Appellant's Br. at 34, and that the government produced no corroborating evidence. But "a federal conviction may be supported by the uncorroborated testimony of even a single accomplice if that testimony is not incredible on its face." *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018) (internal quotation marks and ellipsis omitted). Moreover, "any lack of corroboration goes only to the weight of the evidence, not to its sufficiency. The weight is a matter for argument to the jury, not a ground for reversal on appeal." *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989).

Woolaston's counsel apprised the jury of the absence of corroborating evidence of the Queens meeting. Having heard Woolaston's arguments, the jury was entitled to credit Williams's testimony, which was not incredible on its face.

Venue was also proper on the government's second proffered basis: a series of phone calls and text messages in 2018 between Williams and a government confidential informant, "Jerry," while Jerry was in a hotel in Manhattan. "[A] telephone call placed by a government actor within a district to a conspirator outside the district can establish venue within the district provided the conspirator uses the call to further the conspiracy." *United States v. Rommy*, 506 F.3d 108, 122 (2d Cir. 2007). Woolaston argues that Homeland Security Investigations ("HSI") agents improperly "manufactured" this overt act in S.D.N.Y. by, among other things, booking Jerry's Manhattan hotel, driving him there from New Jersey, and repeatedly instructing him to call Williams from the hotel. We have held out the possibility of venue being improper where "key events occur in one district, but the prosecution, preferring trial elsewhere, lures a defendant to a distant district for some minor event simply to establish venue." *United States v. Myers*, 692 F.2d 823, 847 n.21 (2d Cir. 1982). Given that the key events in this case principally occurred in the District of New Jersey ("D.N.J."), we are troubled by the government's orchestration of minor events in S.D.N.Y. merely to create venue there. Under different circumstances, that conduct could possibly furnish grounds for reversal. Nevertheless, we need not decide whether a manufactured venue defense exists in this Circuit, because even if it did, it would be unavailing to Woolaston. We have stated that "[t]he concern over a distant district is critical, as the provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." *United States v. Rutigliano*, 790 F.3d 389, 399 (2d Cir. 2015) (internal quotation marks omitted). As S.D.N.Y. and D.N.J. are neighboring districts, that concern is absent here. And even if, as Woolaston argues, prosecution in a distant district should not be an essential element of a manufactured venue defense, he does not explain what other unfairness or hardship he faced from being prosecuted in New York instead of New Jersey.

For similar reasons, we sustain Judge Sweet's jury instructions on venue. We review "a claim of error in jury instructions *de novo*," *United States v. Aina-Marshall*, 336 F.3d 167, 170 (2d Cir. 2003), reversing a conviction based on the trial judge's refusal to issue a requested instruction only if "that instruction is legally correct, represents a theory of defense with [a] basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge," *United States v. Vasquez*, 82 F.3d 574, 577 (2d Cir. 1996). Judge Sweet did not err in refusing to instruct the jury, as Woolaston requested, that "venue is not proper if you find that there would be no basis for venue in the Southern District of New York absent a Government-manufactured connection." App'x at 148-49. Because this formulation of the manufactured venue defense fails to account for the concern over a distant district or other exceptional circumstances, it was not "legally correct." *Vasquez*, 82 F.3d at 577.

## II.  Entrapment

Woolaston next argues that he was entrapped as a matter of law. We again disagree.

Entrapment is an affirmative defense with two elements: "(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part." *United States v. Bala*, 236 F.3d

87, 94 (2d Cir. 2000) (quoting *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995)). If, as here, the defendant establishes inducement, "the prosecution must prove predisposition to commit the crime beyond a reasonable doubt." *United States v. Kopstein*, 759 F.3d 168, 173 (2d Cir. 2014). Predisposition may be demonstrated through "(1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." *Id.* (quoting *United States v. Al-Moayad*, 545 F.3d 139, 154 (2d Cir. 2008)). The evidence sufficiently demonstrated Woolaston's predisposition to commit the charged offenses. Williams testified that Woolaston bragged to him about having a "crew" of nine people who helped him smuggle cocaine from Jamaica. App'x at 786. Williams also testified that he later participated in Woolaston's scheme. In 2018, Woolaston suggested to Jerry, the government informant, that a previous drug shipment had been seized by law enforcement and refused to finalize a plan without first "talking to my team." App'x at 1686. And while planning the final stages of the sham transaction, Woolaston told Williams he was not afraid to "show [a] man my gun," App'x at 1738, and promised to "come in there blazing" if necessary, App'x at 829. A reasonable jury could conclude that this evidence, and other evidence like it, evinced both Woolaston's experience in narcotics trafficking and his willingness to use guns in connection with it.

We also affirm Judge Sweet's jury instruction on entrapment. There is no material difference between instructing the jury, as Judge Sweet did, that "[p]redisposition is measured independently from the government's inducement," App'x at 1553, and instructing them, as Woolaston requested, that "[t]he government cannot rely on conduct that was [in]duced by government agents to prove that the defendant was predisposed to commit the charged crime," App'x at 1385. After all, it "would be impossible for the jury to measure predisposition independently from the Government's inducement if they rely on induced conduct." *Woolaston*, 2020 WL 91488, at *10. Thus, Woolaston's proposed instruction may have been "legally correct," but his challenge fails because his proposed instruction's theory of defense was "effectively presented elsewhere in the charge." *Vasquez*, 82 F.3d at 577.

## III.    Evidentiary Rulings

Finally, Woolaston requests a new trial on the grounds that Judge Sweet erred in (1) admitting evidence of gun-related items found in a safe attributed to Woolaston and of previous illegal firearms purchases Woolaston had made, and (2) excluding video excerpts of Williams's post-arrest interview with HSI investigators. We review evidentiary rulings "under a deferential abuse of discretion standard." *United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015). "But even when an evidentiary ruling is 'manifestly erroneous,' the defendant will not receive a new trial if admission of the evidence was harmless." *United States v. Siddiqui*, 699 F.3d 690, 702 (2d Cir. 2012) (citation omitted). We reject Woolaston's evidentiary challenges.

Judge Sweet properly admitted testimony about the gun paraphernalia found in the safe. We have "approved the admission of firearms as evidence of narcotics conspiracies, because drug dealers commonly keep firearms on their premises as tools of the trade." *United States v. Vegas*, 27 F.3d 773, 778 (2d Cir. 1994) (citation and internal quotation marks omitted). The tools-of-the-trade argument "applies with extra force" where, as here, there is evidence that the firearms are

stored in the same container as drugs or drug paraphernalia. *Id.* at 779; App'x at 809 ("Q: What happened to the cocaine? / A [Williams]: He put away some into his safe and he took some with him. / Q: Who put some into his safe? / A: Tyrone [Woolaston]."). As for Woolaston's previous illegal firearms purchases, "evidence of . . . an existing course of criminal conduct similar to the crime for which [the defendant] is charged" is probative of the defendant's predisposition to commit the crime. *United States v. Brunshtein*, 344 F.3d 91, 101 (2d Cir. 2003) (quoting *Salerno*, 66 F.3d at 547). Woolaston's entrapment defense put his predisposition at issue. This testimony was therefore relevant to the central question of whether Woolaston was "an unwary innocent" ensnared by the government's investigation or "an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (internal quotation marks omitted).

Finally, we decline to order a new trial because of Judge Sweet's exclusion of portions of Williams's post-arrest interview. Although Woolaston should have been permitted to introduce portions of the video to impeach Williams, the exclusion of that evidence does not warrant a new trial. On cross examination of Williams and the HSI agents, Woolaston's counsel was able to explore the inconsistencies between Williams's post-arrest interview and his direct examination at trial, his lucidity during the post-arrest interview, and the fact—relevant to Woolaston's argument concerning Williams's bias—that the government had offered him substantial benefits for cooperating in the case against Woolaston. Given this, we cannot conclude that the video itself would be more than "merely cumulative evidence." *United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991).

We have considered all of Woolaston's remaining arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5